# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-1354V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| VANESSA GARRIS, | * | Chief Special Master Corcoran |
| Petitioner, | * | Filed: November 18, 2025 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Jessica A. Olins*, Maglio Christopher & Toale, Seattle, WA, for Petitioner.

*Ryan P. Miller*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On April 28, 2022, Vanessa Garris filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that she suffered multiple sclerosis ("MS") as a result of receiving the hepatitis B vaccine on February 10, 2020. *See* Petition (ECF No. 1) at 3; Petitioner's Memorandum in Support of Entitlement, dated November 22, 2024 (ECF No. 42) ("Second Memo") at 9. The matter was resolved on the papers, and I found that the Petitioner had not established entitlement. Entitlement Decision, dated June 20, 2025 (ECF No. 46) ("Decision").

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated Oct. 6, 2025 (ECF No. 50) ("Mot."). This is Petitioner's sole fees and costs request. Petitioner requests $101,488.95 in attorney's fees and costs (reflecting $83,857.80 in attorney's fees, plus $17,631.15 in costs) for the work performed by Jessica Olins at Maglio Christoper & Toale. Mot. at 1. Respondent reacted to the present fees request on October 14, 2025. *See* Response, dated Oct. 14, 2025 (ECF No. 51) ("Resp."). Respondent agrees that Petitioner has satisfied the statutory requirement for a fees award, and otherwise defers the calculation of the amount to be awarded to my discretion. Resp. at 2–3. Petitioner filed a Reply reiterating the request for fees and costs as indicated in the Motion. Reply, dated Oct. 16, 2025 (ECF No. 52).

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$100,393.94**

## I. Reasonable Basis is Met

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g., Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not automatically entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum.*

*Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g., Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that this case was brought in good faith and there was sufficient objective basis to entitle her to a fees and costs award. Her asserted injury of MS was not in contention, and she could point to objective record support that her symptoms became more evident in the post-vaccination timeframe (even though the record also supported the conclusion that her MS likely existed at the time of vaccination). The possibly-causal role of the hepatitis B vaccine in leading to MS has also in the past been deemed a reasonable issue (although I do not deem it reasonable any more). And nothing from a fact standpoint changed in the matter as it proceeded that would justify a finding that reasonable basis ceased to exist once the matter was fully resolved.

Accordingly, and in light of the exceedingly lenient standard that governs reasonable basis determinations, a final award of fees and costs in this matter is permissible. And because I find no reason otherwise to deny a fees award, I will allow one herein. Future counsel should, however, be hesitant to allege additional hepatitis B vaccination-MS claims unless armed with *new* reliable evidence that makes causation more likely.

**II.     Calculation of Fees**

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. Id. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), except where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception"). *Avera*, 515 F.3d at 1348

3

(citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

|  | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|
| Altom Maglio AMM (attorney) | $445.00 | $520.00 | N/A | N/A | N/A |
| Danielle Strait DAS (attorney) | $395.00 | $415.00 | N/A | $480.00 | N/A |
| Elizabeth Abramson EKA (Attorney) | N/A | N/A | N/A | $320.00 | N/A |
| Jessica Olins JAO (Attorney) | N/A | $290.00 | $320.00 | $355.00 | $410.00 |
| Joseph Vuckovich JAV (Attorney) | N/A | N/A | $415.00 | $445.00 | $490.00 |
| Jennifer Maglio JGM (Attorney) | N/A | N/A | N/A | N/A | $572.00 |
| Audrey Harper ADH (paralegal) | N/A | $170.00 | N/A | N/A | N/A |
| Amy Semanie AJS (Paralegal) | N/A | $160.00 | N/A | N/A | N/A |
| Aisha Jones ANJ (Paralegal) | N/A | $170.00 | N/A | N/A | N/A |
| Chelsea Harris CNH (Paralegal) | N/A | N/A | N/A | $190.00 | N/A |
| Jacob Hess JBH (Paralegal) | $165.00 | $170.00 | N/A | N/A | N/A |
| Kimberly Dutra KAD (Paralegal) | N/A | $170.00 | N/A | N/A | N/A |
| Kendall Wallin KJW (Paralegal) | N/A | $170.00 | $180.00 | $190.00 | $205.00 |
| Lindsay Wilkinson LVW (Paralegal) | N/A | $160.00 | $170.00 | N/A | N/A |

Ms. Olins practices in Seattle, WA, and her Maglio Firm colleagues practice in

4

Washington, DC, and Sarasota, FL—jurisdictions that have been deemed "in forum." Accordingly, they should be paid forum rates as established in *McCulloch*. *See Franklin v. Sec'y of Health & Hum. Servs.*, No. 21-885V, 2023 WL 6388242 (Fed. Cl. Spec. Mstr. Sept. 7, 2023). Upon review, I find the time devoted to the matter is reasonable, and most attorney hourly rates are consistent with the OSM Attorneys' Forum Hourly Rate Fee Schedules and what has been awarded to these practitioners in the past. I will, however, adjust Mr. Maglio's 2022 rate to $505.00, which I have done previously. *See Englert v. Sec'y of Health & Hum. Servs.*, No. 23-0798V, 2025 WL 573758, at *2 (Fed. Cl. Spec. Mstr. Jan. 8, 2025). This reduces the amount of fees to be awarded by **$4.50**.[3]

### III. Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $17,631.15 in outstanding costs, including medical record retrieval costs, mailing costs, filing fees, and costs associated with two experts: Drs. Michael Bradshaw and Darin Okuda. ECF No. 50-6. Petitioner has provided supporting documentation for the Court's filing fee, medical records requests, mailing costs, and Docusign costs. *See id.* I therefore grant these costs in full.

To recover expert costs, it is expected that experts submit an itemized invoice with their hourly rate. Petitioner did provide an itemized invoice for her two experts. ECF No. 50-6 at 55, 65. Dr. Okuda prepared two expert reports in this case and was the sole expert to submit reports in this matter on behalf of the Petitioner. Report, dated May 21, 2024, filed as Ex. 17 (ECF No. 36-3); Report, dated October 17, 2024, filed as Ex. 42 (ECF No. 40-2). Dr. Okuda billed at an hourly rate of $500.00 per hour and charged $9,500.00 for his expert services—$3,750.00 for his initial report, and $5,750.00 for his supplemental report. ECF No. 50-6 at 65, 68. According to his itemized invoice, he spent 19 hours on this case and billed $500.00 per hour. ECF No. 50-6 at 65. I find his time spent on the matter reasonable and his hourly rate in accordance with what he has been paid in the past, and I grant the costs pertaining to Dr. Okuda in full. *Matte v. Sec'y of Health & Hum. Servs.*, No. 16-949V, 2019 WL 2273772, at *3 (Fed. Cl. Spec. Mstr. Apr. 22, 2019).

---

[3] Calculated by ($520.00*0.3) – ($505.00*0.3) = $4.50.

Dr. Bradshaw was a consulting expert in this matter, and charged $550 per hour of work. He billed a total of $5,988.01 for roughly 11 hours of work on this case. Petitioner argues that his hourly rate should not be reduced (even though it exceeds Dr. Okuda's rate) because his analysis and background in neurology was greatly informative in this matter. Mot. at 13. However, this expert input was in service of a theory that was ultimately inadequate—and I do not find an expert who did not otherwise offer a report for review should be compensated at levels comparable to a claimant's primary causation expert. Rather, the general principal of a consulting expert charging the same fee as an expert is analogous to an attorney billing tasks that a paralegal should perform. *See e.g.*, *Lamar v. Sec'y of Health & Hum. Servs.*, No. 99-583V, 2008 WL 3845165, at *1 (Fed. Cl. July 30, 2008); *Plott v. Sec'y of Health & Hum. Servs*, No. 92–633V, 1997 WL 842543 (Fed.Cl.Spec.Mstr. Apr. 23, 1997).

Therefore, I find it appropriate to reduce Dr. Bradshaw's hourly rate to $450.00 per hour, reducing his overall costs by **$1,090.51.**[4] (I make no adjustments to the total work performed on the matter).

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. **I award a total amount of $100,393.94 (reflecting $83,853.30 in attorneys' fees and $16,540.64 in costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[4] Calculated by: $450.00per hour / 60 minutes = $7.5 per minute * 653 total minutes worked on the case = $4897.50. $5988.01 – $4897.50 = $1,090.51.

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.